**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**

| | |
|---|---|
| NATIONAL ASSOCIATION FOR STOCK CAR AUTO RACING, LLC,<br><br>Plaintiff,<br><br>v.<br><br>THE INDIVIDUALS, CORPORATIONS, LIMITED LIABILITY COMPANIES, PARTNERSHIPS, AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE A TO THE COMPLAINT,<br><br>Defendants. | Civil Action No. 3:26-cv-00602 |

**MEMORANDUM AND TEMPORARY RESTRAINING ORDER**

## I. INTRODUCTION

**THIS MATTER** is before the Court on Plaintiff National Association for Stock Car Auto Racing, LLC's ("Plaintiff" or "NASCAR") Motion for *Ex Parte* Temporary Restraining Order pursuant to Rule 65 of the Federal Rules of Civil Procedure, 15 U.S.C. § 1116, 15 U.S.C. § 1114, and 15 U.S.C. § 1125(a). As discussed below, having carefully considered the Motion and accompanying arguments and exhibits, the Court will **GRANT** a limited *ex parte* temporary restraining order as set forth below.

## II. APPLICABLE LEGAL STANDARDS

A temporary restraining order is appropriate and will issue where the movant demonstrates (1) likelihood of success on the merits; (2) likelihood that it will suffer irreparable harm absent

immediate relief; (3) the balance of the equities tip in the movant's favor; and (4) injunctive relief is in the public's interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *dmarcian, Inc. v. dmarcian Eur. BV*, 60 F.4th 119, 138 (4th Cir. 2023). "The substantive standard for granting either a temporary restraining order or a preliminary injunction is the same." *Patel v. Moron,* 897 F. Supp. 2d 389, 395 (E.D.N.C. 2012). Rule 65(b) of the Federal Rules of Civil Procedure authorizes this Court to hear and issue TRO motions *ex parte* where "specific facts in an affidavit or complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition" and "the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65(b)(1).

## III. FINDINGS OF FACT AND CONCLUSIONS OF LAW

This Court makes the following findings of fact and conclusions of law:

1) Plaintiff owns four federal trademark registrations (the "NASCAR Trademarks") as follows:

| Trademark | Registration No. | Goods Covered |
|---|---|---|

| | | |
|---|---|---|
| NASCAR | 1,908,112 | CLASS 6: common metals; namely, key chains, license plates and pins;<br><br>CLASS 9: scientific apparatus; namely, sunglasses and walkie talkies;<br><br>CLASS 14: precious metals; namely, silver medallions, bronze medallions and wrist watches;<br><br>CLASS 16: Paper articles, namely, bumper stickers, calendars, display counter units for trading cards, decals, pens, mounted and unmounted photographs, notebooks, trading cards and laminated signs;<br><br>CLASS 18: leather and leather imitations; namely, back packs, credential holders, wallets, fanny packs;<br><br>CLASS 21: household utensils; namely, mugs, shot glasses, drinking glasses and plastic sport bottles;<br><br>CLASS 24: textile goods; namely, beach towels, blankets; cloth banners; |

| Trademark | Registration No. | Goods Covered |
|---|---|---|

| | | |
|---|---|---|
| | | CLASS 25: clothing; namely, caps, baseball hats, sweat shirts, sweat pants, footwear, golf shirts, jackets, knit caps, pants, vests, shorts, straw hats, sweaters, tank tops, T-shirts and visors<br><br>CLASS 28: games and playthings; namely, board games, die cast miniature cars, die cast miniature trucks, plush stuffed animals;<br><br>CLASS 30: edible goods; namely, chocolate candy bars and cookies |
| | 5,388,088 | CLASS 25: Clothing, namely, caps, hats, baseball hats, straw hats, visors, tops, collared shirts, sport shirts, golf shirts, t-shirts, tank tops, sweaters, sweat shirts, jackets, coats, rainwear, sweat pants, pants, shorts, nightgowns, pajamas, robes, vests, socks, belts, shoes, and footwear |
| | 5,578,788 | CLASS 25: Clothing, namely, caps, hats, baseball hats, headwear, visors, tops, collared shirts, sports shirts, golf shirts, t-shirts, tank tops, sweaters, sweat-shirts, jackets |
| | 6,196,869 | CLASS 25: Clothing, namely, caps, hats, baseball hats, headwear, visors, tops, collared shirts, sports shirts, golf shirts, t-shirts, tank tops, sweaters, sweat-shirts, jackets;<br><br>CLASS 41: Entertainment services, namely, conducting motorsports racing events; regulating, governing, and sanctioning motorsports racing events; providing an online database featuring news and information regarding motorsports via computer information networks, global networks and wireless networks; |

| Trademark | Registration No. | Goods Covered |
|---|---|---|
| | | entertainment services, namely, programs featuring motorsports racing and news, information, and developments regarding motorsports racing, all rendered through television and radio; |

2) Each Defendant is alleged to be a non-U.S. entity, association, or individual, located in a foreign jurisdiction, each of which sells, offers for sale, distributes, and/or advertises goods through e-commerce stores operating on various e-commerce marketplaces, including but not limited to, PayPal Inc. ("PayPal"), Amazon.com, Inc. ("Amazon"), WhaleCo, Inc. ("Temu"), and Walmart, Inc. ("Walmart") (each a "Marketplace" and, collectively, the "Marketplaces").

3) Each Defendant is alleged to have used in commerce a reproduction, counterfeit, copy, or colorable imitation of one or more of the NASCAR Trademarks on or in connection with the sale, offer for sale, distribution, or advertising of goods on their respective Seller Aliases on the Marketplaces ("Infringing Products").

4) Each Defendant is allegedly offering Infringing Products for sale throughout the United States and shipping Infringing Products to the United States.

5) Defendants are subject to the personal jurisdiction of this Court pursuant to Rule 4(k)(2) of the Federal Rules of Civil Procedure and North Carolina's long-arm statute (N.C. Gen. Stat. § 1-75.4). Based on the facts set forth above, it is reasonable for Defendants to expect that they may be sued in the United States.

6) Plaintiff has never authorized any of the Defendants to use any of the NASCAR Trademarks on or in connection with the sale, offer for sale, distribution, or advertising of any goods in the United States.

7) Plaintiff has established for purposes of this temporary injunction that the Infringing

Products offered for sale by Defendants are not genuine and that each Defendant is using one or more of the NASCAR Trademarks or a colorable imitation of the NASCAR Trademarks on or in connection with the sale, offer for sale, distribution, or advertising of Infringing Products.

8) Thus, Plaintiff has established for the purpose of this motion that it is substantially likely to succeed on the merits of its trademark infringement claims:

a) Plaintiff owns valid federal trademark registrations for the NASCAR Trademarks;

b) The Infringing Products that Defendants are advertising and offering for sale are not genuine;

c) Defendants are using spurious marks that are identical to, or substantially similar to, the NASCAR Trademarks in commerce on or in connection with the sale, offer for sale, distribution, and/or advertising of the Infringing Products;

d) Defendants' use of the NASCAR Trademarks or colorable imitations of the NASCAR Trademarks is likely to cause consumer confusion, mistake, or deception as to the source or origin of the Infringing Products;

e) Alternatively and/or additionally, each Defendant is using in commerce a word, term, name, symbol, or device, or a combination thereof, or a false or misleading representation of fact on or in connection with its goods in a manner that is likely to cause confusion, or to cause mistake, or to deceive, as to the affiliation, connection, or association of each Defendant with Plaintiff, or as to the origin, sponsorship, or approval of each Defendant's goods or commercial activities by Plaintiff.

9) Under 15 U.S.C. § 1116(a), Plaintiff is entitled to a rebuttable presumption of irreparable harm because Plaintiff is seeking a temporary restraining order or a preliminary injunction and has demonstrated a likelihood of success on the merits. As held in the preceding

paragraphs, Plaintiff has demonstrated a likelihood of success on the merits and is, therefore, automatically entitled to a presumption of irreparable harm, thereby satisfying the second factor of the temporary restraining order analysis.

10) Even in the absence of the rebuttable presumption, Plaintiff has shown that it is likely to suffer irreparable harm if an injunction does not issue. The proliferation of counterfeit and/or infringing copies of Plaintiff's goods erodes the distinctiveness of the NASCAR Trademarks and diminishes their value and associated goodwill. Because Plaintiff cannot control the quality of counterfeit and infringing goods, the sale of inferior counterfeit or infringing goods by Defendants may have a materially adverse effect on Plaintiff's business reputation and the goodwill associated with the NASCAR Trademarks. This is sufficient to establish a likelihood of irreparable harm. The widespread and unauthorized use of the NASCAR Trademarks in the marketing, offering for sale, and sale of counterfeit and/or infringing goods threatens the extensive goodwill associated with Plaintiff's business and the NASCAR Trademarks, and will continue to undermine and stifle the sale of Plaintiff's own, genuine goods. There is a significant threat that Plaintiff will suffer irreparable harm without an injunction.

11) It is likely that Plaintiff will suffer immediate and irreparable loss, damage, or injury unless Plaintiff's request for *ex parte* relief is granted:

a) It is likely that Defendants will continue to sell counterfeit and infringing goods on the Marketplaces in the absence of the requested TRO, causing immediate and irreparable harm to Plaintiff's business and reputation;

b) As a result, it is likely that consumers will continue to be misled, confused, and disappointed by the quality of these goods, thereby significantly and irreparably damaging Plaintiff's valuable goodwill; and

c) Plaintiff may continue to suffer lost sales of genuine goods as the result of

the lower-cost Infringing Products offered for sale by Defendants.

12) The balance of harms favors Plaintiff. If the TRO is denied, Plaintiff will continue to suffer the above-mentioned irreparable harm to its reputation and the goodwill associated with the NASCAR Trademarks. On the other hand, enjoining Defendants from selling counterfeit and/or infringing goods simply requires them to follow the law and any harm Defendants may suffer is purely monetary and is therefore compensable, unlike the harm that Plaintiff will continue to suffer.

13) Plaintiff has further demonstrated that this TRO should be granted *ex parte*. If Plaintiff had provided Defendants notice of its application for TRO, Defendants might have ended their operations under their current names in the Marketplaces (to the extent they had not already done so), transferred any ill-gotten gains away from the Marketplaces, hidden their identities, covered up evidence of their infringing activities, and shielded their ill-gotten assets by transferring them beyond the Court's reach in a concerted effort to avoid liability and prevent Plaintiff from achieving a meaningful recovery.

14) Granting Plaintiff an *ex parte* TRO is also in the public's interest. It will prevent consumer confusion in the marketplace and remove from the stream of commerce Infringing Products of unknown and likely inferior quality and composition, thereby preventing consumer harm, confusion, mistake, and deception.

15) However, the Court declines to, at this time, order any financial restraints, freeze or seizure of funds or blanket restrictions on the Marketplaces doing business with Defendants. Significantly, the Court's initial review of three of the four Defendants who are alleged to be selling on Amazon (Bimila leather store, Buy and Catch Online Store and "Golia") reveals that one is misnamed (Golia should be Golin) and nearly all of the items offered for sale are unrelated to NASCAR and do not appear to be infringing on any other recognized intellectual property. The

fourth has only two items for sale – one is a "Ricky Bobby" costume that includes a small patch that includes "NASCAR" – and the other is unrelated to NASCAR. The Court will not shut down these entities based on that very thin evidence of infringement.

With respect to the remaining 92 Defendants who are alleged to sell on Temu, the Court has been unable (through a sampling review of these Defendants) to locate the alleged infringing products or even online stores on Temu that bear these names. Accordingly, even though the Court does not question the accuracy of Plaintiff's representations regarding the prior infringing activities of these other Defendants nor doubt the claimed prevalence of the sale of counterfeit goods, given the overall lack of evidence with respect to the Amazon listings and the absence of any apparent ongoing harm from these Defendants, the Court is similarly unwilling to order Marketplaces and financial institutions to shut down or freeze the assets of these entities to the extent they are still doing business.

More broadly, it appears that NASCAR's primary complaint – which it candidly describes – is that it is "overwhelmed" by the amount of online sales of counterfeit goods, to which the current legal rules and tools are inadequate to respond. And it wants this Court to step into the breach to order Marketplaces and financial institutions to take further steps to combat this unlawful conduct. *See* Doc. No. 1 at ¶ 22. The Court acknowledges, indeed shares, Plaintiff's concern that online opportunities and the sophisticated practices of infringers may have sped ahead of existing legal restraints. However, this Court should not and will not solve these thorny problems simply by judicial fiat. Congress has developed intellectual property protection statutes that balance the rights of intellectual property owners, Marketplaces, financial institutions and other stakeholders and it is Congress, not the Courts, from which Plaintiff needs to seek a rebalancing of those interests that more closely aligns with new commercial realities. *See, e.g., Georgia v. Public.Resource.Org, Inc.*, 590 U.S. 255, 272 (2020) ("[I]t is generally for Congress, not the courts, to decide how best to pursue the Copyright Clause's

objectives.”).

In light of the foregoing, it is hereby **ORDERED AND ADJUDGED** that Plaintiff’s Motion for *Ex Parte* Temporary Restraining Order is **GRANTED** as follows:

1) Each Defendant (as reflected on the attached Schedule A), its officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with any Defendant having notice of this Order is hereby ordered to temporarily:

a) Cease and refrain from manufacturing, advertising, offering for sale, selling, distributing, destroying, selling off, transferring, or otherwise disposing of any Infringing Products;

b) Cease and refrain from manufacturing, advertising, offering to sell, selling, reproducing, or distributing any goods utilizing the NASCAR Trademarks, or any confusingly similar goods, other than genuine products manufactured or distributed by Plaintiff or its authorized manufacturers and distributors; and

c) Cease and refrain from destroying, selling off, transferring, or otherwise disposing of any documents, electronically stored information, or financial records or assets of any kind relating to the manufacture, importation, sale, offer for sale, distribution, or transfer of any Infringing Products;

d) Cease and refrain from using the NASCAR Trademarks on or in connection with any entity or selling alias that any Defendant may own, operate, or control on any Marketplace;

e) Cease and refrain from any and all use of the NASCAR Trademarks as metatags, on any webpage (including the title of any web page), in any advertising links to other websites, from search engines’ databases or cache memory, or any other form of use of such terms that are visible to a computer user or serves to direct computer searches to

any entity or selling alias registered, owned or operated by any Defendant on any Marketplace; and

f) Cease and refrain from altering, disabling, closing, or transferring ownership of any seller alias on any Marketplace during the pendency of this Action, or until further Order of the Court.

2) For the duration of this suit, each Defendant must preserve all documents and electronically stored information arising from or related to its sale, offer for sale, distribution, and advertising of Infringing Products through any entity or selling alias located on the Marketplaces.

3) Within seven (7) days of receiving actual notice of this Order, all Financial Institutions that receive actual notice of this Order shall provide a report to Plaintiff for each Defendant having any account with any Financial Institution, the report to include, at a minimum, the following information:

a) Legal name and email address of each Defendant;

b) Identity of all financial accounts linked to or associated with each Defendant's account associated with any entity or selling alias used on the Marketplaces, or from or to which funds have been transferred from the attached accounts, including the name of the Financial Institution, account numbers, routing numbers, and other relevant data to allow Plaintiff to seek further application of this Order.

4) Upon receipt of notice of this Order, each Marketplace on which a Defendant maintains a Seller Alias or account is ordered to within seven (7) days:

a) Provide to Plaintiff the name and email address of each Defendant having an account or store on the Marketplace; and

b) Disable any infringing product listings specifically identified by Plaintiff for each of the Defendants' entities or selling alias on the Marketplaces.

5) Plaintiff is authorized to issue expedited written discovery, pursuant to Federal Rules of Civil Procedure 33, 34 and 36, related to:

a) the identities and locations of Defendants, their officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with any Defendant, including all known contact information, including any and all associated e-mail addresses; and

b) the nature of Defendants' operations and all associated sales, methods of payment for services and financial information, including, without limitation, identifying information associated with any entity or selling alias and Defendants' financial accounts, as well as providing a full accounting of Defendants' sales and listing history related to their respective entities or selling alias.

6) Plaintiff is authorized to issue any such expedited discovery requests by electronic means, including by electronic email. Defendants shall respond to any such discovery requests within 7 business days of being served by electronic email.

7) Plaintiff may notify the Marketplaces and Financial Institutions of this Order by electronic means, including by electronic email.

8) Pursuant to this Court's discretion, Plaintiff shall not presently be required to post a bond or other security. However, any Defendant may appear and immediately challenge any portion of the Order and provide the Court with a reasonable estimation of its potential lost sales, along with supporting documentation sufficient to allow the Court to decide what an appropriate amount of surety would be. Plaintiff will then have one (1) week in which to file a response.

9) This Order shall remain in effect for fourteen (14) days unless the hearing on Plaintiff's motion for an order to show cause why a preliminary injunction should not issue cannot be heard within such time, in which case the Order shall remain in effect until the date of the

hearing or until such further date as set by the Court or stipulated to by the parties.

10) This Order shall apply to Defendants, their associated entities and selling alias operating on the Marketplaces, and any other websites, domain names, seller identification names, e-commerce stores, or Financial Institution accounts which are being used by Defendants for the purpose of advertising, offering for sale, and selling any Infringing Products at issue in this action and/or unfairly competing with Plaintiff.

11) A hearing is set before this Court in the United States Courthouse located at 401 West Trade Street, Charlotte, North Carolina, 28202, Courtroom 4B, on August 31, 2026, at 10:00 a.m., at which time Defendants and/or any other affected persons may challenge the appropriateness of this Order and move to dissolve the same, and at which time the Court will hear argument on Plaintiff's requested preliminary injunction. Defendants shall appear and show cause why said preliminary injunction should not issue.

12) Plaintiff shall serve copies of the Complaint, Motion for TRO, materials required by applicable Standing Orders issued by the Court, and this Order on each Defendant by electronic email using email addresses provided by the Marketplaces, Financial Institutions, or Defendants themselves or by other electronic means reasonably calculated to provide notice to all Defendants. However, by permitting the service of these papers by electronic means the Court is not holding that such service constitutes valid service of process; rather, this is the fastest and most effective and efficient means to provide Defendants with actual notice of the Court's temporary ruling.

13) Any response or opposition to Plaintiff's request for a preliminary injunction must be served on Plaintiff's counsel by August 26, 2026, and filed with the Court, along with Proof of Service, which may be made by electronic means. Plaintiff shall file any reply memorandum on or before August 28, 2026. The above dates may be revised upon stipulation by all parties and approval of this Court. Defendants are on notice that failure to appear at the hearing may result in

the imposition of a preliminary injunction against them pursuant to 15 U.S.C. § 1116(d), Rule 65 of the Federal Rules of Civil Procedure, 28 U.S.C. § 1651(a), and the Court's inherent authority.

14) This Temporary Restraining Order expires within fourteen (14) days unless the hearing on Plaintiff's motion for an order to show cause why a preliminary injunction should not issue cannot be heard within such time, in which case the Order shall remain in effect until the date of the hearing. Under Federal Rule of Civil Procedure 65(b)(2), this Order may be extended for one additional period of up to fourteen (14) days for good cause shown or by consent of the adverse party.

SO ORDERED, ADJUDGED AND DECREED.

Signed: August 17, 2026

Kenneth D. Bell
United States District Judge

## LIST OF ALL NAMED DEFENDANTS SUBJECT TO ORDER

## SCHEDULE A

| Doe No | Seller Alias | Platform | Seller ID |
|---|---|---|---|
| 1 | Bimila leather store | Amazon | A31ZOSX9JLMJJB |
| 2 | Brother Apparel | Amazon | A18AP4UUZ1AKN7 |
| 3 | Buy & Catch Online Store | Amazon | A2TGQT01C9UQZU |
| 4 | Golia | Amazon | A1ZGVJ4KRX86OD |
| 5 | Boundless T | Temu | 634418219922045 |
| 6 | C H E N Y | Temu | 634418219216773 |
| 7 | CENXIZI | Temu | 634418221003571 |
| 8 | Chic Tides | Temu | 634418219487061 |
| 9 | ChicBoutiques | Temu | 634418218261878 |
| 10 | ClosetCrush | Temu | 634418219052253 |
| 11 | CQHGFLY | Temu | 634418219224533 |
| 12 | Creative Tees | Temu | 634418219489480 |
| 13 | Customization Tips | Temu | 634418219749775 |
| 14 | CXYEAN | Temu | 634418217251616 |
| 15 | Den Dapper | Temu | 634418219605775 |
| 16 | Dmb music crazy | Temu | 634418220005020 |
| 17 | FancyDesigns | Temu | 634418218723231 |
| 18 | Fashion Hunter A | Temu | 634418220874431 |
| 19 | Fashionbest | Temu | 634418219736422 |
| 20 | Fen Clothes | Temu | 634418219696849 |
| 21 | FUSION CULTURE | Temu | 634418218898731 |
| 22 | Fwordstshirt | Temu | 634418217144207 |
| 23 | Gardenia Living | Temu | 634418218772750 |
| 24 | GraffiTees Co | Temu | 634418222869749 |
| 25 | Haloxylon tree shelf local | Temu | 634418219778870 |
| 26 | hwdyp | Temu | 634418218883841 |
| 27 | HXLCC | Temu | 634418220556363 |
| 28 | HXLFF | Temu | 634418220719302 |
| 29 | HXLGG | Temu | 634418220724421 |
| 30 | Influence Style | Temu | 634418220041704 |
| 31 | InnoCraft Studio | Temu | 634418219213140 |
| 32 | INS FUN SHOP | Temu | 634418219821430 |
| 33 | Insight Tshirt A | Temu | 634418220049785 |
| 34 | Insight Tshirt B | Temu | 634418220049838 |
| 35 | Jayzel | Temu | 634418219509986 |
| **Doe No** | **Seller Name** | **Platform** | **Seller ID** |
| 36 | JIAMEIAB | Temu | 634418221359987 |
| 37 | JoyCatCII | Temu | 634418219998597 |

| | | | |
|---|---|---|---|
| 38 | jtjihji | Temu | 634418220298942 |
| 39 | King of Wolves | Temu | 634418219046653 |
| 40 | LO Creative mens wear | Temu | 634418219612285 |
| 41 | Lomorao | Temu | 634418219388898 |
| 42 | maiziyihao | Temu | 634418218819098 |
| 43 | Mary LLC | Temu | 634418219767525 |
| 44 | Meaningful Time | Temu | 634418219490963 |
| 45 | meihua yunshan | Temu | 634418219961983 |
| 46 | MPD LLC | Temu | 634418219986831 |
| 47 | Multifunctional Tshirt | Temu | 634418219736233 |
| 48 | New start point | Temu | 634418219678953 |
| 49 | Opal Otter | Temu | 634418220856675 |
| 50 | ORTARCO | Temu | 634418219340710 |
| 51 | Patchwork Fabric Factory | Temu | 634418219788398 |
| 52 | Pixel Tech Prints | Temu | 634418220174793 |
| 53 | Please stay when you come | Temu | 634418220516300 |
| 54 | Pole Star A | Temu | 634418219242008 |
| 55 | Progress Space | Temu | 634418219490994 |
| 56 | purely Vintage | Temu | 634418219488060 |
| 57 | Red Closets | Temu | 634418218965389 |
| 58 | Royal Blue Waves | Temu | 634418220082638 |
| 59 | RUAIZMA | Temu | 634418219345157 |
| 60 | sanghuran clothing | Temu | 634418220412651 |
| 61 | SFEDRR | Temu | 634418220200495 |
| 62 | SHENHUXI | Temu | 634418220077281 |
| 63 | SQWFashion Products | Temu | 634418218854542 |
| 64 | Strongest mens clothing factory | Temu | 634418216956288 |
| 65 | StrongPower | Temu | 634418219279851 |
| 66 | Style X Spot | Temu | 634418218331163 |
| 67 | sufeiDExl | Temu | 634418220556060 |
| 68 | Sumatran Tiger | Temu | 634418218371844 |
| 69 | SunMeters No | Temu | 634418220281807 |
| 70 | Tee Bag | Temu | 634418220193974 |
| 71 | Threaded Stories | Temu | 634418219844665 |
| 72 | Tigons Tiger | Temu | 634418218453710 |
| 73 | TrendyShells | Temu | 634418219994415 |
| 74 | TTJUS | Temu | 634418219177184 |
| 75 | UniqueTee Designs | Temu | 634418218521970 |
| 76 | Unstd H | Temu | 634418220171193 |
| 77 | Urban Thread | Temu | 634418220240618 |
| 78 | UrbanBlank Customs | Temu | 634418222902175 |

| Doe No | Seller Alias | Platform | Seller ID |
|---|---|---|---|

| | | | |
|---|---|---|---|
| 79 | VogueHaven | Temu | 634418220092512 |
| 80 | VRNB | Temu | 634418219811773 |
| 81 | WDGAHYGG | Temu | 634418220201646 |
| 82 | WeiTa GIGI | Temu | 634418219093632 |
| 83 | White Cedars | Temu | 634418219484030 |
| 84 | Wholesale Clothing XS | Temu | 634418220135544 |
| 85 | Winters Solstice | Temu | 634418218562481 |
| 86 | WONDERGIFTCX | Temu | 634418217477967 |
| 87 | WYFDWWW | Temu | 634418220236921 |
| 88 | xiaohuanche | Temu | 634418219490689 |
| 89 | XMMHK | Temu | 634418219639431 |
| 90 | Yan style clothing | Temu | 634418220652895 |
| 91 | YelRelCoo | Temu | 634418219998462 |
| 92 | Youth still clothes square | Temu | 634418219866112 |
| 93 | Z Fashion Clothing | Temu | 634418220230496 |
| 94 | ZFVZMA | Temu | 634418219345314 |
| 95 | ZW FUNNY SPACE ONE | Temu | 634418220104412 |
| 96 | ZZMBR | Temu | 634418220166356 |