**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**

| | |
|---|---|
| NATIONAL ASSOCIATION FOR STOCK CAR AUTO RACING, LLC,<br><br>Plaintiff,<br><br>v.<br><br>BIMILA LEATHER STORE, ET AL.,<br><br>Defendants. | Civil Action No. 3:26-cv-00602 |

**PRELIMINARY INJUNCTION ORDER**

This cause comes before the Court following a hearing on Plaintiff National Association for Stock Car Auto Racing, LLC's Motion for Preliminary Injunction on September 14, 2026, and supplemental briefing as ordered by the Court. *See* Doc. Nos. 3, 16, 17. The Court previously entered a Temporary Restraining Order against all Defendants ("TRO") on August 17, 2026. Doc. No. 8. The Court ordered the third party Financial Institutions and Marketplaces that have reliable contact information for the Defendants to provide same, and authorized Plaintiff to provide notice to the Defendants identified in Schedule A of these proceedings by electronic means pursuant to Rule 65(a)(1). The Court further authorized Plaintiff to issue expedited written discovery. *Id*. In conjunction with the TRO the Court set a hearing to consider Plaintiff's request for a Preliminary Injunction. *Id*.

No Defendant has appeared or filed an opposition to Plaintiff's motion nor has Plaintiff effected service on any of the Defendants. While a Court may enter a preliminary injunction based on notice prior to service under Rule 65 of the Federal Rules of Civil Procedure, the absence of service (or even evidence that any Defendant actually received the emailed notice) emphasizes the need for the Court to exercise great caution in using its power to grant preliminary relief, particularly a mandatory injunction. *See Wetzel v. Edwards*, 635 F.2d 283,286 (4th Cir. 1980) ("The authority of the ... court ... to issue a preliminary injunction, especially a mandatory one should be sparingly exercised. Mandatory preliminary injunctions do not preserve the status quo and normally should be granted only in those circumstances when the exigencies of the situation demand such relief."); *cf Commodity Futures Trading Comm'n v. IBS, Inc*., 113 F. Supp. 2d 830, 850 (W.D.N.C. 2000), *aff'd sub nom. Commodity Futures Trading Comm'n v. Kimberlynn Creek Ranch, Inc.*, 276 F.3d 187 (4th Cir. 2002) ("Given that service was proper and that the corporate Defendants have notice of these proceedings, the failure of these entities to properly enter an appearance through counsel in this case or otherwise object to the sufficiency of service of process does not prevent the Court from exercising jurisdiction over the companies or entering a preliminary injunction against them.").

Through the preliminary injunction hearing and Plaintiff's associated motion papers and filings Plaintiff has established:

1) Plaintiff owns four federal trademark registrations (the "NASCAR Trademarks") as follows:

| Trademark | Registration No. | Goods Covered |
|---|---|---|
| NASCAR | 1,908,112 | CLASS 6: common metals; namely, key chains, license plates and pins;<br><br>CLASS 9: scientific apparatus; namely, sunglasses and walkie talkies;<br><br>CLASS 14: precious metals; namely, silver medallions, bronze medallions and wrist watches;<br><br>CLASS 16: Paper articles, namely, bumper stickers, calendars, display counter units for trading cards, decals, pens, mounted and unmounted photographs, notebooks, trading cards and laminated signs;<br><br>CLASS 18: leather and leather imitations; namely, back packs, credential holders, wallets, fanny packs;<br><br>CLASS 21: household utensils; namely, mugs, shot glasses, drinking glasses and plastic sport bottles; |

| Trademark | Registration No. | Goods Covered |
|---|---|---|
| | | CLASS 24: textile goods; namely, beach towels, blankets; cloth banners;<br><br>CLASS 25: clothing; namely, caps, baseball hats, sweat shirts, sweat pants, footwear, golf shirts, jackets, knit caps, pants, vests, shorts, straw hats, sweaters, tank tops, T-shirts and visors<br><br>CLASS 28: games and playthings; namely, board games, die cast miniature cars, die cast miniature trucks, plush stuffed animals;<br><br>CLASS 30: edible goods; namely, chocolate candy bars and cookies |
| NASCAR | 5,388,088 | CLASS 25: Clothing, namely, caps, hats, baseball hats, straw hats, visors, tops, collared shirts, sport shirts, golf shirts, t-shirts, tank tops, sweaters, sweat shirts, jackets, coats, rainwear, sweat pants, pants, shorts, nightgowns, pajamas, robes, vests, socks, belts, shoes, and footwear |
| | 5,578,788 | CLASS 25: Clothing, namely, caps, hats, baseball hats, headwear, visors, tops, collared shirts, sports shirts, golf shirts, t-shirts, tank tops, sweaters, sweat-shirts, jackets |
| NASCAR CUP SERIES | 6,196,869 | CLASS 25: Clothing, namely, caps, hats, baseball hats, headwear, visors, tops, collared shirts, sports shirts, golf shirts, t-shirts, tank tops, sweaters, sweat-shirts, jackets;<br><br>CLASS 41: Entertainment services, namely, conducting motorsports racing events; regulating, governing, and sanctioning motorsports racing |

| Trademark | Registration No. | Goods Covered |
|---|---|---|
| | | events; providing an online database featuring news and information regarding motorsports via computer information networks, global networks and wireless networks; entertainment services, namely, programs featuring motorsports racing and news, information, and developments regarding motorsports racing, all rendered through television and radio; |

2) Each Defendant is properly alleged to be a non-U.S. entity, association, or individual, located in a foreign jurisdiction, each of which sells, offers for sale, distributes, and/or advertises goods through e-commerce stores on various e-commerce marketplaces, including but not necessarily limited to, Amazon.com, Inc. ("Amazon"), and WhaleCo, Inc. ("Temu"), (each a "Marketplace" and, collectively, the "Marketplaces").

3) Each Defendant is alleged to have used in commerce a reproduction, counterfeit, copy, or colorable imitation of one or more of the NASCAR Trademarks on or in connection with the sale, offer for sale, distribution, or advertising of goods in the Marketplaces ("Infringing Products").

4) Each Defendant has allegedly offered Infringing Products for sale throughout the United States. Each Defendant also appears to be willing to engage in commercial transactions with residents of the United States and ship Infringing Products to the United States.

5) Each Defendant accepts payment for its goods in U.S. dollars through, for example, a variety of payment processors, banks, escrow services, money transmitters, the Marketplaces themselves, and other companies that engage in the processing or transfer of money of or on behalf

of Defendants by virtue of their operation on any of the Marketplaces (collectively referred to hereafter as "Financial Institutions").

6) Defendants are subject to the personal jurisdiction of this Court pursuant to Rule 4(k)(2) of the Federal Rules of Civil Procedure and North Carolina's long-arm statute (N.C. Gen. Stat. § 1-75.4). Based on the facts set forth above, it is reasonable for Defendants to expect that they may be sued in the United States.

7) Plaintiff has never authorized any of the Defendants to use any of the NASCAR Trademarks on or in connection with the sale, offer for sale, distribution, or advertising of any goods in the United States.

8) Plaintiff has established that any Infringing Products offered for sale by Defendants are not genuine and that each Defendant is using or may have used one or more of the NASCAR Trademarks or a colorable imitation of the NASCAR Trademarks on or in connection with the sale, offer for sale, distribution, or advertising of Infringing Products.

9) Plaintiff has established that it is substantially likely to succeed on the merits of its trademark infringement claims:

a) Plaintiff owns valid federal trademark registrations for the NASCAR Trademarks;

b) Any Infringing Products that Defendants are advertising and offering for sale are not genuine;

c) In selling any Infringing Products, Defendants are using spurious marks that are identical to, or substantially similar to, the NASCAR Trademarks in commerce on or in connection with the sale, offer for sale, distribution, and/or advertising of the Infringing Products;

d) Defendants' use of the NASCAR Trademarks or colorable imitations of the NASCAR Trademarks is likely to cause consumer confusion, mistake, or deception as to the source or origin of the Infringing Products;

e) Alternatively and/or additionally, in selling any Infringing Products each Defendant is using in commerce a word, term, name, symbol, or device, or a combination thereof, or a false or misleading representation of fact on or in connection with its goods in a manner that is likely to cause confusion, or to cause mistake, or to deceive, as to the affiliation, connection, or association of each Defendant with Plaintiff, or as to the origin, sponsorship, or approval of each Defendant's alleged Infringing Products or commercial activities by Plaintiff.

10) Under 15 U.S.C. § 1116(a), Plaintiff is entitled to a rebuttable presumption of irreparable harm because Plaintiff is seeking a preliminary injunction and has demonstrated a likelihood of success on the merits. As held in the preceding paragraphs, Plaintiff has demonstrated a likelihood of success on the merits and is, therefore, automatically entitled to a presumption of irreparable harm, thereby satisfying the second factor of the temporary restraining order and preliminary injunction analysis.

11) Even in the absence of the rebuttable presumption, Plaintiff has shown that it is likely to suffer irreparable harm if a limited injunction prohibiting further infringement does not issue. The proliferation of counterfeit and/or infringing copies of Plaintiff's goods erodes the distinctiveness of the NASCAR Trademarks and diminishes their value and associated goodwill. Because Plaintiff cannot control the quality of counterfeit and infringing goods, the sale of inferior counterfeit or infringing goods by Defendants will have a materially adverse effect on Plaintiff's business reputation and the goodwill associated with the NASCAR Trademarks. This is sufficient to establish a likelihood of irreparable harm. The widespread and unauthorized use of the

NASCAR Trademarks in the marketing, offering for sale, and sale of counterfeit and/or infringing goods threatens the extensive goodwill associated with Plaintiff's business and the NASCAR Trademarks, and will continue to undermine and stifle the sale of Plaintiff's own, genuine goods. There is a significant threat that Plaintiff will suffer irreparable harm without an injunction prohibiting any sale of Infringing Goods.

12) However, with respect to Plaintiff's request for a freeze of funds to protect its ability to secure damages if it effects service and prevails in this action, the prospect of monetary harm that can be remedied by monetary damages is, as a matter of law, insufficient to establish irreparable harm. *See Celsis In Vitro, Inc. v. CellzDirect, Inc*., 664 F.3d 922, 930 (Fed. Cir. 2012) (Harm that can be easily remedied by money damages, axiomatically, does not constitute irreparable harm); *see also Multi-Channel TV Cable Co. v. Charlottesville Quality Cable Operating Co*., 22 F.3d 546, 551 (4th Cir. 1994) ("[I]rreparable injury is suffered when monetary damages are difficult to ascertain or are inadequate."); *Shibumi Shade, Inc. v. Beach Shade LLC*, No. 5:21-CV-256-FL, 2022 WL 390839, at *15 (E.D.N.C. Feb. 8, 2022).

13) The balance of harms favors Plaintiff. In the absence of a preliminary injunction, Plaintiff will likely continue to suffer the above-mentioned irreparable harm to its reputation and the goodwill associated with the NASCAR Trademarks. On the other hand, enjoining Defendants from selling counterfeit and/or infringing goods poses little to no risk of damaging the goodwill, if any, associated with the Defendants.

14) Granting Plaintiff a preliminary injunction during the pendency of this case is also in the public's interest, as it will prevent consumer confusion in the marketplace and remove from

the stream of commerce Infringing Products of unknown and likely inferior quality and composition, thereby preventing consumer harm, confusion, mistake, and deception.

15) Plaintiff has requested a permanent injunction and recovery of any unlawful profits from Defendants' alleged sale of Infringing Products pursuant to 15 U.S.C. § 1117(a).

16) Defendants may destroy evidence of their counterfeiting activities, such as evidence regarding their operations and payment processing histories on the Marketplaces and other Financial Institutions, as well as hide and/or transfer any proceeds from the sale of Infringing Products.

In light of the foregoing, it is hereby **ORDERED AND ADJUDGED** that Plaintiff's Motion for Preliminary Injunction is **GRANTED, in part,** as to all Defendants as follows:

1) For the duration of this action, each Defendant (as named in Schedule A of the Complaint, Doc. No. 5), its officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with any Defendant having notice of this Order is hereby ordered to:

a) Cease and refrain from manufacturing, advertising, offering for sale, selling, distributing, destroying, selling off, transferring, or otherwise disposing of any Infringing Products;

b) Cease and refrain from manufacturing, advertising, offering to sell, selling, reproducing, or distributing any goods utilizing the NASCAR Trademarks, or any confusingly similar goods, other than genuine products manufactured or distributed by Plaintiff or its authorized manufacturers and distributors;

c) Cease and refrain from destroying, selling off, transferring, or otherwise disposing of any documents, electronically stored information, or financial records or assets of any kind relating to the manufacture, importation, sale, offer for sale, distribution, or transfer of any Infringing Products; and

d) Cease and refrain from using the NASCAR Trademarks on or in connection with any "storefront" that any Defendant may own, operate, or control on any Marketplace.

2) The Court declines to preliminarily enjoin Defendants' use of the NASCAR Trademarks as "metatags, on any webpage (including the title of any web page), in any advertising links to other websites, from search engines' databases or cache memory, or any other form of use of such terms that are visible to a computer user or serves to direct computer searches to [storefronts] registered, owned or operated by any Defendant on any Marketplace." Plaintiff has not proffered evidence of any Defendant's actual alleged infringing use of Plaintiff's trademarks in this manner so the Court cannot assess the likelihood of success (or the other necessary elements of a preliminary injunction) with respect to this additional request. That is, the issue is entirely speculative at this point in the litigation and therefore is not properly the subject of preliminary injunctive relief.

3) Further, the Court declines to order the freezing of Defendants' funds as requested by Plaintiff. As discussed above, other than in exceptional circumstances (such as freezing money being stolen in a fraudulent scheme), the challenge of pursuing money damages against a defendant does not alone create irreparable harm or necessitate immediate preliminary injunctive relief. This is particularly true here, where Plaintiff's evidence on which it asks the Court to order this extraordinary relief consists only of documents establishing that some sales of allegedly infringing products were made (and for a few Defendants the gross amount of the sales). Plaintiff has failed to provide any evidence of the amount being held in any Defendant's account in any Financial

Institution or Marketplace or that any of those funds were the proceeds of unlawful conduct. Nor does it appear that significant (if any) ongoing sales are occurring based on the Court's review of the challenged websites. Indeed, Plaintiff candidly admitted at oral argument that it wanted the Court to freeze Defendants' funds so that they would have an incentive to appear in Court to respond to Plaintiff's claims. Putting aside the questionable success of such a tactic, it would plainly be inappropriate for the Court to issue a preliminary injunction on those grounds. Therefore, the Court will not preliminarily order the freezing of Defendants' funds.

4) For the duration of this suit, each Defendant must preserve all documents and electronically stored information arising from or related to its sale, offer for sale, distribution, and advertising of Infringing Products through the Marketplaces.

5) Plaintiff may notify the marketplaces and Financial Institutions of this Order by electronic means, including by electronic mail.

6) This Order shall remain in effect for the duration of this action and until such time as a final judgment is entered.

7) This Order shall apply to Defendants, their associated virtual storefronts on the marketplaces, and any other websites, domain names, seller identification names, e-commerce stores, or Financial Institution accounts which are being used by Defendants, their officers, agents, employees, attorneys, and all persons in active concert or participation with any of them, for the purpose of advertising, offering for sale, and selling any Infringing Products at issue in this action and/or unfairly competing with Plaintiff.

8) The Court's previously issued Temporary Restraining Order and Order to Show Cause, Doc. No. 8, is hereby dissolved and is replaced by this Preliminary Injunction Order, which takes immediate effect.

**SO ORDERED, ADJUDGED AND DECREED**

Signed: September 24, 2026

Kenneth D. Bell
United States District Judge